475 So.2d 752 (1985)
STATE of Louisiana
v.
Thomas NASH.
No. 84-KA-1770.
Supreme Court of Louisiana.
September 10, 1985.
*753 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Douglas Greenburg, Dist. Atty., Alexander L. Doyle, Asst. Dist. Atty., for plaintiff-appellee.
A.D. O'Neal, Jackie Marve, Indigent Defenders Board, Houma, for defendant-appellant.
DENNIS, Justice.
Defendant, Thomas Nash, was convicted by a jury of manslaughter and sentenced to twelve years imprisonment at hard labor. Because the trial court granted defendant an order of appeal prior to July 1, 1982, defendant appealed directly to this court. See La. Const. art. V § 5(E).
Defendant, Thomas Nash, stabbed David Turbyfill with a knife in three parts of his body: in his back at the bottom of his rib cage, in his chest, and in his left arm pit. The last wound severed a major artery, and Turbyfill bled to death before he could be taken to a hospital.
The altercation, which occurred near a grocery store in Gibson, Louisiana on November 30, 1980, arose from an aborted drug transaction. Turbyfill and his brother-in-law, James L. Winters, both white males, had gone to the store for milk. By chance they met Nash and his companion, Morris Watson, both black males. Watson learned that Turbyfill had some marijuana for sale and soon all of these persons were congregated near some vehicles outside the store.
Winters obtained a bag of marijuana from Turbyfill and offered it for inspection. When the bag came into Nash's hands he bolted and ran into a trailer park behind the store. Turbyfill and Winters gave chase and caught Nash inside the trailer park out of the others' view. It was undisputed that Nash fatally stabbed Turbyfill in an ensuing struggle. The evidence was in sharp conflict, however, as to whether Nash acted in self-defense as one who "reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(1).
Nash testified that as he was being chased one of his pursuers threatened to shoot him. Turbyfill and Winters cornered him, Nash said, and beat him nearly into unconsciousness. Nash claimed that the circumstances required him to defend himself with the knife he fortuitously discovered in the pocket of the jacket that he was wearing. He had borrowed the jacket from a companion. Several of defendant's friends saw him immediately after the encounter and corroborated that he had been beaten extensively about the face and head. Moreover, Nash's testimony regarding the stabbing was consistent with the statement he gave to the police when he turned himself in two days after the incident.
Winters, on the other hand, testified that he did not participate in beating Nash and that he did not see the actual stabbing or the immediately preceding events. He admitted that he threatened to shoot Nash during the chase, although he did not have a firearm. He claimed, however, that something struck him in the face and knocked him down just as he grabbed Nash by the collar. Winters testified that when he got up he immediately returned to the vehicle at the grocery store and did not *754 participate in Turbyfill's struggle with Nash. About forty-five seconds later, he said, Turbyfill ran from the trailer park with wounds which would later prove to be fatal.
Winters was a crucial witness for the prosecution, for it was principally by his testimony that the state hoped to carry its burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. La.R.S. 14:20(1). See State v. Martin, 458 So.2d 454 (La.1984); State v. Lynch, 436 So.2d 567 (La.1983). In order to blunt the effect of the defense's cross-examination of Winters, therefore, the state elicited his admission to a prior conviction for theft in Oklahoma. On cross-examination, defense counsel established that Winters had served twenty-two months in the Oklahoma penitentiary for that offense.
The defense was blocked in attempts to impeach Winters by showing that he was on parole from his Oklahoma offense at the time of the drug activity preceding the stabbing and by showing that Winters had not been arrested or prosecuted for the drug activity. His failure to testify in a manner helpful to the state could have resulted in his arrest and prosecution for distribution of marijuana, or at least an adverse report to his parole officer, and possibly a revocation of his parole. From this, defendant would have sought to showor at least arguethat Winters shaded his testimony out of fear or concern of possible jeopardy to his parole and/or prosecution on the drug charge. In offering this evidence defense counsel made it clear that he would not introduce Winter's parole or the state's failure to arrest or charge him as a general impeachment of Winter's character as a truthful person, but rather, the defense would use that information to probe Winter's testimony for bias and prejudice.
The trial court sustained the state's objection to the introduction of Winter's parole relying on La.R.S. 15:495, which provides that in a general impeachment of a witness's character as a truthful person evidence of conviction of a crime, but not of arrest, indictment or prosecution is admissible. Additionally, the trial court apparently concluded that Winters' testimony about his willingness to engage in distribution of marijuana sufficiently showed his potential for bias, and that cross-examination as to his arrest, parole, and the state's failure to charge him was not significant enough to warrant its consumption of trial time.
We disagree with the trial court's interpretation of the confrontation clause and our statutes with regard to the scope of cross-examination afforded a person accused of a crime. We reverse.
The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) and by art. 1, § 16 of the 1974 Louisiana Constitution. Confrontation means more than being allowed to confront the witnesses physically; a primary interest secured by it is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); La. Const. 1974, art. 1, § 16; 5 J. Wigmore, Evidence § 1395, p. 23 (3d ed. 1940).
The cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of the witness, which affords the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the witness's credibility. A more particular attack on the witness's credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices or ulterior motives of the witness as they may relate *755 to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial and is always relevant as discrediting the witness and affecting the weight of his testimony. Davis v. Alaska, supra, 415 U.S. at 316, 94 S.Ct. at 1110; 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross examination. Davis v. Alaska, supra; Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).
In applying these principles in Davis v. Alaska, supra, the United States Supreme Court, in an opinion by Chief Justice Burger, expressing the view of seven members of the court, held that the Sixth Amendment right of confrontation of witnesses requires that a defendant in a state criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness's probationary status as a juvenile delinquent notwithstanding that the impeachment would conflict with the state's asserted interest in preserving the confidentiality of juvenile delinquency adjudication. In so holding, the court specifically rejected the rationale of the Alaska Supreme Court which had held that a sense of the probationer's anxiety and apprehension over possible implication in the crime was conveyed to the jury even without reference to his probationer status, and that the jury was afforded the opportunity to observe the demeanor of the youth and pass on his credibility.
In rejecting the Alaska Supreme Court's limited view of the Confrontation clause, Chief Justice Burger stated:
We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a "rehash" of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which "`would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' Brookhart v. Janis, 384 U.S. 1, 3 [86 S.Ct. 1245, 1246, 16 L.Ed.2d 314]." Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748 [750], 19 L.Ed.2d 956 (1968). Davis v. Alaska, supra, 415 U.S. at 318, 94 S.Ct. at 1111.
Similarly, in the present case while defense counsel may have been permitted to show a possible general lack of credibility by asking Winters if he had ever been convicted, counsel was unable to make a record from which to argue the most convincing reason why Winters might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. Defense counsel should have been allowed to attempt to show and to argue that Winters gave testimony favorable to the state's case in order to avoid imprisonment, either as a result of an Oklahoma parole revocation or a Louisiana prosecution for distribution of marijuana, or both. This possible bias is more compelling impeachment than the prior conviction brought out in the general attack on Winters' credibility. On the facts of this case, to make fully effective use of his right to confront and cross-examine the witness, defense counsel should have been permitted to expose to the jury the facts from which *756 jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Defendant was thus denied the right of effective cross-examination, a constitutional error in the first magnitude which no amount of showing of want of prejudice would cure. Davis v. Alaska, supra, 415 U.S. at 318, 94 S.Ct. at 1111; Brookhart v. Janis, supra; Smith v. Illinois, supra.
Read in this light, it is apparent that La.R.S. 15:492 and 495 statutorily embody two of the basic methods of impeachment guaranteed by the confrontation clause. Accordingly, one statute cannot be applied in disregard of the other or of the constitutional dimensions of each. For this reason also the trial court in considering whether to permit cross-examination should heed the basic rule that evidence which is inadmissible for one purpose may be admissible for another. See La.R.S. 15:442. Evidence inadmissible in a general attack on the witness's credibility under La.R.S. 15:495 may nevertheless be admissible as a more particular attack showing bias or prejudice related to issues or personalities in the case at hand under La.R.S. 15:492. See, e.g., State v. Brady, 381 So.2d 819 (La.1980).
The defendant's conviction and sentence are reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.
BLANCHE, J., concurs and assigns reasons.
LEMMON, J., concurs believing the error was not harmless beyond a reasonable doubt.
BLANCHE, Justice (concurring).
Blanche, J., concurs being of the opinion that La.R.S. 15.492 allows inquiry into any fact showing or tending to show bias, interest or corruption. A correct application of this statute would have been dispositive of the issue before the Court. See State v. Rankin, 465 So.2d 679 (La.1985) and State v. Brady, 381 So.2d 819 (La.1980).