893 So.2d 109 (2005)
STATE of Louisiana
v.
Tony BURBANK.
No. 2001-KA-0831.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 2004.
*110 Eddie J. Jordan, Jr., District Attorney, Claire Devidas, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
Judge MICHAEL E. KIRBY.
In our original opinion in this matter, State v. Burbank, XXXX-XXXX (La.App. 4 Cir. 2/27/02), 811 So.2d 1112, we held it was not error for the trial court to restrict defense counsel's cross examination of the state's witness, Cassandra Scott, about the existence and terms of a purported plea agreement between her and the state regarding a drug charge pending against *111 her. However, the Supreme Court reversed, citing State v. Vale, 96-2953 (La.9/19/97), 699 So.2d 876, and found that "foreclosing cross-examination of Scott on her expectations for her own case ... unduly `restricted the inquiry into the witness's motive and interest in testifying for the state and thereby frustrated an `important function of the constitutionally protected right of cross-examination.'" State v. Burbank, XXXX-XXXX, p. 2 (La.4/23/04), 872 So.2d 1049, 1050-51. Also the Supreme Court reversed our holding that the defense's attempt to use a prior inconsistent statement was an impermissible use of hearsay evidence to prove the truth of the matter asserted. The case was remanded with instructions to determine on the record whether these errors were harmless beyond a reasonable doubt and thus did not contribute to the jury's verdict. See Burbank, XXXX-XXXX, p. 3, 872 So.2d at 1051.

DISCUSSION
The Supreme Court held that the trial court erroneously restricted the defendant's cross-examination of Cassandra Scott about the existence of a plea agreement. Ms. Scott testified that she did not have a plea agreement with the State. The defendant sought to introduce testimony that Ms. Scott had an informal agreement with the State that she would serve only one year on her charge of possession of cocaine. While the trial court did not allow the defendant to introduce evidence of such an informal agreement, the defendant was allowed to introduce testimony through his cross-examination of Ms. Scott that her case was continued over twenty times and the most recent hearing was to be held the day after defendant's trial. The defendant also had Ms. Scott admit on cross-examination that she had three prior felony convictions and could possibly be sentenced to serve twenty years to life in prison.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right and applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In addition, this right to confrontation is found in the Louisiana Constitution of 1974. See Article I, § 16. In order to cross-examine a witness effectively, a defendant must be afforded the opportunity to demonstrate any bias or self-interest which is attached to a witness' testimony. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Senegal, 316 So.2d 124 (La.1975). This right to evince bias is also provided by La. R.S. 15:492:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
A cross-examiner is allowed wide latitude in exploring any facts that might support an inference of bias. State v. Sweeney, 443 So.2d 522, 529 (La.1983). The bias must be specific as opposed to general in nature. State v. Williams, 445 So.2d 1171, 1178 (La.1984). The possibility that the prosecution may have leverage over a witness due to that witness' pending criminal charges is recognized as a valid area of cross-examination. State v. Rankin, 465 So.2d 679, 681 (La.1985); State v. Brady, 381 So.2d 819, 820 (La.1980). To the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope or knowledge *112 that he will receive leniency from the state is highly relevant to establish his bias or interest." Id. A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. Id.; State v. Vale, 666 So.2d 1070, 1071 (La.1996).
Sixth Amendment confrontation errors are subject to harmless error analysis. The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination was fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Wille, 559 So.2d 1321, 1332 (La.1990).
In State v. Brady, 381 So.2d 819 (La.1980), the court held that cross-examination regarding a witness' pending charges, when used to show that the witness may be testifying in exchange for favorable treatment from the district attorney's office, is permissible:
[T]he focus of defendant's questioning was to establish that the district attorney's office had leverage over Mr. Brown as a result of the pending charge (or at least that Mr. Brown might have assumed so), a reason why Mr. Brown's credibility was or might be suspect in this particular case. R.S. 15:492 permits a witness to be questioned as to "any particular fact showing or tending to show" bias or interest in the case on trial and this Court has held on numerous occasions that a witness' hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest.
Id. at 822.
In State v. Nash, 475 So.2d 752 (La.1985), defense counsel was prohibited from questioning a crucial state witness about the fact that he was on parole from a theft conviction in Oklahoma (although the witness did testify as to the theft conviction) or about the fact that he had not been arrested or prosecuted for the drug activity which preceded the defendant's shooting of the victim. The court found that the trial court's ruling denying the defendant the opportunity to elicit these facts constituted a violation of the defendant's Sixth Amendment right to confront and cross-examine his witness. The Court stated:
Defense counsel should have been allowed to attempt to show and to argue that Winters gave testimony favorable to the state's case in order to avoid imprisonment, either as a result of an Oklahoma parole revocation or a Louisiana prosecution for distribution of marijuana, or both. This possible bias is more compelling impeachment than the prior conviction brought out in the general attack on Winters' credibility. On the facts of this case, to make fully effective use of his right to confront and cross-examine the witness, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Defendant was thus denied the right of effective cross-examination, a constitutional error in the first magnitude *113 which no amount of showing of want of prejudice would cure.
Id., at 755-756.
In State v. Rankin, 465 So.2d 679 (La.1985), the State introduced a witness who testified that the defendant did not kill the victim in self-defense. The defendant was overruled in his attempt to call to the stand the attorney of the witness to determine whether the witness had been promised favorable treatment on a pending but unrelated charge in exchange for his testimony. During cross-examination, the witness admitted that he had a pending charge of being a convicted felon in possession of a firearm. However, he denied that his charge was reduced to a misdemeanor in exchange for his testimony. A footnote in the opinion notes that, according to the defendant's application for writs, the witness' pending charge was disposed of the day after the defendant's trial, the witness receiving a four-month sentence after entering a plea of guilty. The Louisiana Supreme Court found that the defendant's own testimony at trial revealed that his justifiable homicide claim was without basis and therefore any error in the trial court's ruling which denied the defendant the opportunity to cross-examine the witness was harmless under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In the present case, Cassandra Scott's testimony was crucial to the prosecution's case. Ms. Scott was the only person who could, and did, identify the defendant as the person who killed the victims. In fact, the prosecution's case rested entirely upon Ms. Scott's testimony. However, while the trial court erred in limiting Ms. Scott's testimony about an alleged plea agreement, the defendant was allowed to question Ms. Scott about her prior convictions and the effect the prior convictions would have on her sentencing for the offense for which she was presently incarcerated. Ms. Scott acknowledged that she had three prior felony offenses and that she could be sentenced from twenty years to life imprisonment. She also testified that her case had been continued over twenty times and was presently set for the day after the defendant's trial. Ms. Scott denied that a plea agreement existed. Defendant sought to introduce evidence of a preliminary agreement which had existed between Ms. Scott and the State. The defendant proffered the testimony of Scott's attorney who stated that there was no formal plea agreement but that an agreement had been discussed but was never formalized. Ms. Scott eventually went to trial and was acquitted of the offense.
Granted that the trial court erred in not allowing the defendant to introduce testimony of the potential plea agreement, the error was harmless because the defendant was allowed to introduce evidence of Ms. Scott's prior felonies and the fact that she could be sentenced to life imprisonment. Ms. Scott admitted during cross-examination that she knew she could possibly receive a lighter sentence if she cooperated with the State. She testified that if she pled guilty, she would probably be sentenced to thirty months in prison.
The Supreme Court also found that the trial court erred when it refused to allow the defendant's witness, Eugene Jarrow, to testify that Cassandra Scott told him that she did not see the defendant kill the victims.
Louisiana has long sanctioned the impeachment of a witness in criminal trials by his or her prior inconsistent statements. La. C.E. art. 607(D)(2); State v. Gabriel, 450 So.2d 611, 616 (La.1984); State v. Mosely, 360 So.2d 844, 845 (La.1978). Provided that the witness has had a fair opportunity "to admit the fact and has *114 failed distinctly to do so," La. C.E. art. 613, extrinsic evidence of the statement is admissible, not to prove the truth of the matter asserted, i.e., not for its hearsay content, but to establish the fact of contradiction as a means of impeaching a witness's general credibility. State v. Cousin, 96-2973, p. 8 (La.4/14/98), 710 So.2d 1065, 1069. In this regard, Louisiana has followed the minority rule that such prior inconsistent statements "simply do not constitute substantive evidence." State v. Allien, 366 So.2d 1308, 1311 (La.1978); State v. Owunta, 99-1569, p. 1 (La.5/26/00), 761 So.2d 528, 529.
La. C.E. art. 607 provides that a defendant may attack the credibility of a witness through the use of extrinsic evidence which contradicts the witness' testimony, provided that a proper foundation is laid for such extrinsic evidence pursuant to La. C.E. art. 613. La. C.E. art. 613 states that extrinsic evidence is admissible if the defense has fairly directed the witness' attention to the statements, and the witness has been given the opportunity to admit the fact and failed to do so.
In the case at bar, Ms. Scott testified that she did not know Eugene Jarrow and did not make any such statements to him. Defendant allegedly sought to impeach Ms. Scott's credibility by having Jarrow testify as to the statements Ms. Scott allegedly made to Jarrow. The Supreme Court believed that it was error to prevent such testimony. However, even though it may have been error, the error was harmless. Defendant had already introduced the testimony of Robert Smith, a private investigator hired by defendant's family, to impeach Ms. Scott's credibility. Through Smith's testimony, the defendant showed that Ms. Scott was willing to change her testimony if the investigator was willing to help her get custody of her children. Ms. Scott, herself, acknowledged that she changed her testimony twice and told Smith that she did not see the defendant kill the victims. In addition, the defendant was allowed to introduce evidence of Ms. Scott's drug use. Jarrow testified that Ms. Scott was a "crackhead." Ms. Scott admitted that she used narcotics and that her present charge was for possession of narcotics. She stated that she had used cocaine and marijuana, in addition to alcohol, the night of the murders.
In the present case, the jury's verdict came down to a question of credibility of the witnesses. Despite the number of alibi witnesses produced by the defendant, the jury chose to accept the testimony of Cassandra Scott. It did so completely aware of Ms. Scott's potential bias and prejudice. The jury was made aware of Ms. Scott's prior felony convictions, her present narcotics charge and the potential for life imprisonment if she was convicted of being a multiple offender. The jury also knew that her case had been continued twenty-three times and that Ms. Scott's case was set for hearing the day after the defendant's trial. The jury was also informed that Ms. Scott believed that if she cooperated with the State, she would probably be sentenced to thirty months in prison. The jury was also made aware of the number of times that Ms. Scott recanted her testimony and that she was willing to change her testimony to benefit herself. Given that the jury was well aware of Ms. Scott's possible bias, the trial court's errors were harmless.

CONCLUSION
Accordingly, we find the two errors committed by the trial court were harmless beyond a reasonable doubt.
CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING ON EACH COUNT.