984 So.2d 842 (2008)
STATE of Louisiana
v.
Sarah E. MERWIN.
No. 07-KA-807.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*843 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Jeffery J. Hand, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
CLARENCE E. MCMANUS, Judge.

STATEMENT OF THE CASE
On March 29, 2006, defendant, Sarah E. Merwin, and her co-defendant, Mona Micelotti, were charged by bill of information with simple burglary of an inhabited dwelling and structure. Defendant pled not guilty at her arraignment and after a one-day trial, she was found guilty as charged. Defendant filed a motion for new trial which was denied. The trial court then sentenced her to six years at hard labor, with four years suspended. The first year of her sentence was to be served without benefit of parole, probation, or suspension of sentence. Thereafter, defendant was to be placed on active probation for the first two years, and inactive probation for the last three years. The trial court also ordered defendant to receive an evaluation and treatment, and complete a substance abuse program. Defendant now appeals her conviction.

FACTS
The following facts were elicited at the trial of defendant and her co-defendant, Mona Micelotti. Willet Joseph Falcon, III testified at trial that in February 2006 he allowed defendant, Sarah E. Merwin, and her mother and co-defendant, Mona Micelotti, to stay at his house located at 616 Oriole Street in Metairie, Louisiana. Falcon had shared crack cocaine with Micelotti and he met defendant through Micelotti. Falcon allowed them to move into his house two days after he met them. Falcon testified that Merwin only brought clothes with her when she moved in. Merwin and Micelotti stayed at Falcon's house for ten days to two weeks. Falcon then asked them to leave because an acquaintance of theirs was selling drugs in his driveway. Micelotti and Merwin took most of their belongings on the day they left and Falcon told them they could return when he was home to retrieve the remaining box of clothing. Falcon testified that Micelloti and Merwin never had a key to his house.
On February 15, 2006, Falcon arrived home with his children. They found the back door of the residence wide open with broken glass on the ground. The children's bikes, stereo, television, DVD-VHS player, and all their DVDs and VHS tapes were taken, as well as the computer Falcon shared with his son. After calling the police, Falcon also noticed two tool boxes were missing. The box of clothes belonging to Micelotti and Merwin was also gone. Falcon had not given Micelotti or Merwin permission to enter his home or to take the items. Falcon described the house as "not necessarily" in disarray. He described the items as "neatly taken." The missing items were never returned. During *844 his testimony, Falcon admitted he was convicted of possession of cocaine in Georgia a year and a half before the robbery of his home.
Falcon's sister, Amber Cancienne, lived across the street from Falcon and knew Falcon had let Micelotti and Merwin stay at his house. She testified at trial that she saw Micelotti and Merwin back a maroon Toyota into Falcon's driveway on February 15, 2006. Cancienne saw both Micelotti and Merwin carry a heavy black trash bag and put it in the trunk of the car. Cancienne thought they were taking more of their things from the house since he had asked them to leave. She didn't think they had a key, so she did not know how they got into Falcon's house. Cancienne also testified that she had not seen a broken window on her brother's house before that day.
Deputy Shenandoah Jones of the Jefferson Parish Sheriff's Office testified that she observed the window of the rear door of Falcon's house had been shattered and a piece of plywood was put in its place. The rear door was the only sign of forced entry. They were unable to get any prints or other forensics since the scene was compromised. Deputy Jones did state that the house did not appear "too ransacked."
Defendant Merwin testified at trial that Falcon met her first, not her mother, and he met Micelotti later after he picked up Merwin. Merwin moved into Falcon's house the next day and stayed two weeks. Micelotti also moved into Falcon's house at Merwin's request. Merwin and Micelotti never received a key. Merwin stated she and Micelotti just left the back door open when they left the house. Merwin further testified that the rear window was broken on the second or third day she moved in with Falcon. Merwin testified that on that day, Falcon "[put] on a show" for the police because a man named Terrell was at the house to sell Falcon some crack. Merwin further testified that the police were at the house because Falcon's sister called them to report drug activity. On that day, after Falcon returned to work, Micelotti swept up the glass from the broken window. Falcon put up some plywood when he returned home from work.
Merwin also testified that she and Micelotti became increasingly uncomfortable in Falcon's house because they had to clean the house and buy food for Falcon's children because he spent all of his money on drugs. According to Merwin, this included money Falcon had obtained from pawning his and his children's possessions. Merwin testified that Falcon tried to have a relationship with either she or Micelotti and living at his house became tense and uncomfortable. Therefore, they both decided to leave. Merwin denied that she and Micelotti robbed Falcon's house. She testified that she and defendant took all of their things from Falcon's house at the same time. Merwin did admit that she was arrested for possession of narcotics in Mississippi.
Defendant now appeals her conviction of simple burglary of an inhabited dwelling or structure alleging two assignments of error.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendant Merwin argues the trial court erred in not allowing her to cross-examine Falcon concerning his probation violation and the resultant outstanding warrant in Georgia. She further contends that the trial court erred in not allowing her to impeach Falcon with the facts concerning the State of Louisiana's contact with Georgia authorities, including any efforts to seek forbearance of the execution of the Georgia warrant on her behalf.
*845 In opposition, the State argues the trial court did not err in limiting the scope of Falcon's cross-examination. The State contends the defendant was not prejudiced by the trial court's decision to prohibit questioning concerning Falcon's failure to comply with the conditions of his probation. In addition, the State argues that the defense cannot raise Falcon's motive for testifying and whether he received any leniency related to his outstanding Georgia warrant on appeal, since these arguments were not raised as a basis for the defense's objection. The State claims that there was neither evidence nor any allegation that Falcon testified to avoid imprisonment or that Jefferson Parish prosecutors had any leverage with Georgia officials regarding the outstanding warrant. The State also claims that the defendant has not shown that the probative value of the details of Falcon's probation violations outweighs its prejudicial.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. La. Const. Art. 1, § 16, State v. Schexnayder, 96-98, p. 18 (La. App. 5 Cir. 11/26/96), 685 So.2d 357, 368, writ denied, 97-2251 (La.1/16/98), 706 So.2d 973. The main and essential purpose of the confrontation right is to secure, for the opponent, the opportunity of cross-examination. State v. Robinson, 01-0273, p. 5 (La.5/17/02), 817 So.2d 1131, 1135. In addition, the confrontation clause of the Louisiana State Constitution affords an accused the right to confront and crossexamine the witnesses against him. Id. Encompassed in the right of confrontation is right of the accused to impeach a witness for bias or interest. Schnexnayder, 96-98 at p. 18, 685 So.2d at 368. The right to expose a witness' motivation in testifying is both a proper and important function of the constitutionally protected right of cross-examination. LSA-C.E. art. 607(D); State v. Nash, 475 So.2d 752, 755 (La.1985); State v. Chester, 97-2790, p. 15 (La.12/1/98), 724 So.2d 1276, 1286, cert. denied, 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999).
"A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the State regarding his conduct." Schexnayder, 96-98 at p. 20, 685 So.2d at 369, quoting State v. Vale, 95-1230, p. 4 (La.1/26/99), 666 So.2d 1070, 1072 (per curiam), citing Nash, 475 So.2d at 755-56.
"Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal." LSA-C.E. art. 609.1(B). "Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. . . ." LSA-C.E. art. 609.1(C). The details of the prior offense may become admissible in order to show its true nature when the witness failed to recall or denied the conviction, testified to exculpatory facts or circumstances surrounding the prior conviction, or when the probative value of the details of the prior conviction have been determined to outweigh the danger of misleading the jury, unfair prejudice, or confusion of the issues. LSA-C.E. art. 609.1(C)(1)(2) and (3). A witness' credibility can also be attacked by extrinsic evidence to show bias, interest, or corruption. LSA-C.E. art. 607(D)(1). Other extrinsic evidence contradicting the witness' testimony is admissible when it is offered solely to attack the credibility of a witness, unless the court determines that the probative value of the evidence is substantially *846 outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. LSA-C.E. art. 607(D)(2).
An error in the defendant's right to confrontation is subject to a harmless error analysis. State v. Williams, 04-608, p. 11 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1102, writ denied, 05-0081 (La.4/22/05), 899 So.2d 559. If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt. Id. The factors considered when determining whether the guilty verdict rendered was unattributable to the error include the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination that was otherwise permitted, and, the overall strength of the State's case. Id.; State v. Robinson, 01-0273 at p. 9, 817 So.2d at 1137. (Citations omitted.) Appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated. State v. Schexnayder, 96-98 at p. 20, 685 So.2d at 369.
In this case, defense counsel for defendant Merwin informed the court that she intended to question Falcon about an active warrant on a probation violation in Georgia. After the State objected, the trial judge informed defense counsel that she could ask about convictions, but not about open warrants. Defense counsel then asked if she was allowed to question Falcon about his probation. The trial judge informed defense counsel that she could only ask about Falcon's convictions. Defense counsel objected to the trial court's ruling. During his testimony, Falcon testified that he currently was in his second term at a drug rehabilitation center. The defendant also admitted that, a year and a half before the burglary, he relapsed into drug use and was convicted of possession of cocaine in Georgia.
The defense counsel was able to attack Falcon's general credibility during her cross-examination by questioning Falcon about his conviction. Therefore, the defense counsel was able to place Falcon's general credibility at issue and elicit testimony that aided the jury it its assessment of the truthfulness of Falcon's testimony. See State v. Chester and State v. Nash, supra.
However, defense counsel was unable to address Falcon's impartiality or bias, since she was unable to question him about his outstanding warrant for a probation violation, and specifically whether Louisiana State officials had discussed with or ensured Falcon that he would not be prosecuted for the probation violation in Georgia. However, in this case, Falcon was the victim, not just a witness. While Falcon may have had an interest in not being prosecuted in Georgia, he had an overwhelming interest in having the defendants prosecuted for burglarizing his house and taking possessions belonging to himself and his children. It was Falcon who called the police to report the crime, which led to the instant prosecution. Therefore, it appears that Falcon did not have to be coerced to pursue the matter.
In addition, it appears that the material points of Falcon's testimony were corroborated. Falcon testified that the objects taken from his house did not belong to the defendants, and that the defendants did not have authorization to remove these objects. Cancienne testified that she saw the defendants remove a heavy trash bag from the Falcon's house and put it in their vehicle. She knew that the defendants previously had been asked to leave Falcon's house. She also knew that the defendants *847 did not have a key to obtain entry to Falcon's house. Deputy Jones testified that she observed that the window of the rear door to Falcon's house had been shattered and a piece of plywood was put in its place. The rear door had the only sign of forced entry. Cancienne testified that Falcon's rear door window was not broken before the burglary. It appears that Cancienne's testimony provided sufficient corroboration of the material points of Falcon's testimony. Therefore, even if the trial court improperly restricted defense counsel's cross-examination of Falcon, the error was harmless, since other evidence at trial corroborated Falcon's testimony. Accordingly, we find the guilty verdict unattributable to any error that may have occurred when the trial court refused to allow the defense counsel to question Falcon concerning his bias. See State v. Schexnayder, supra. Therefore, we affirm defendant's conviction of simple burglary of an inhabited dwelling and structure.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, defendant Merwin requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSC.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals no errors patent in this case.
AFFIRMED.