JOHNSON, J. | defendant, Earl Keith Harris, appeals his conviction and sentence for aggravated second degree battery from the 24th Judicial District Court, Division “B”. For the following reasons, we affirm. FACTS AND PROCEDURAL HISTORY On December 4, 2015, the Jefferson Parish District Attorney filed a bill of information charging Defendant .with one count of aggravated second degree battery, in violation of La, R.S. 14:34.7. Defendant pleaded not guilty at his arraignment on December 7, 2015. Trial commenced on August 24, 2016, before a six-person jury. However, the next day during trial, the trial court granted Defendant’s motion for mistrial, and the proceedings .were stayed pending a writ application to this Court, On August 26, 2016, this Court granted the State’s writ application, finding that the trial court abused its discretion in granting Defendant’s motion for mistrial and remanded the matter to' the trial court to resume trial.[1] .Trial resumed later that day. The following facts were elicited at trial. On the evening of September 11, 2015, Carol Clark, the victim in this case, was at her home at 1245 Aberdeen Drive in Harvey with her family. At some point that evening, she left her home to run ah errand—her granddaughter needed diapers—so she decided to walk around the corner tó her cousin’s home to acquire some. She. retrieved the diapers from her cousin, and as she was 'walking back, she ran into a friend from the neighborhood, Danny Taylor, who she asked to accompany her on her walk back home. She described that as they were walking back on Clydesbank Drive, she noticed bright lights and the roar of a vehicle that was “coming fast” from behind her. She | testified that she was struck by the vehicle, that went through a neighboring field, came back and “roll[ed] over [her] leg again.” Ms. Clark testified that the truck went through the field again and came back a third time, but this time “pulled up on the side” and the driver “looked at [her] on the ground,” “put his left hand on the steering wheel, and looked over on the ground and smiled.” It was not until then that she recognized the driver of the vehicle as Defendant, Earl Keith Harris. She explained she had known Defendant for approximately 20 years, as he and her daughter used to date and had four children together. She also recognized the vehicle he was driving, a silver or gray Expedition, with no license plate and discoloration (a “big prime spot” on the passenger side and back) because it was the vehicle he drove when he lived with her daughter.[2] At some point during this encounter, Mr. Taylor[3] called 9-1-1 to report the incident.[4] Deputy Justin McLin was dispatched to the scene on Clydesbank. When he arrived at the scene, he observed Ms. Clark lying partially in the road, in obvious pain and distress, screaming for help. At the scene, Ms. Clark was able to identity Defendant as her attacker and provided Deputy McLin with a description of the suspect vehicle. Deputy McLin testified that while Defendant was not found at the scene, a vehicle matching the suspect car was spotted across the street on the other side of the canal with a “direct view of the entire incident” but sped off once Deputy McLin became aware of its presence. EMS also arrived at the scene and treated Ms. Clark, who was brought to the hospital due to her injuries. Dr. Elizabeth Skeins, who treated Ms. Clark that evening at the Ochsner Westbank emergency room, explained that Ms. Clark ^sustained a comminuted displaced tibia/fibula fracture, or in other words, that her lower leg was broken into more than one piece. Defendant was later arrested in connection with this incident pursuant to an arrest warrant. Defendant testified on his own behalf. Defendant testified that he neither ran over Ms. Clark nor did he send anyone to run her over. While he could not provide his specific whereabouts on the evening of September 11, 2015, as he does not “walk around trying to hold on to alibies,” he stated he was probably at his home. At the conclusion of the trial, the jury found Defendant guilty as charged. On August 30, 2016, Defendant filed a motion for new trial, which was heard on September 30, 2016, and later denied on October 14, 2016. Also on October 14, 2016, the State filed a habitual offender bill of information, alleging Defendant to be a fourth felony offender. On November 29, 2016, the habitual offender bill was amended, still alleging Defendant to be a fourth felony offender.[5] On December 1, 2016, the trial court sentenced Defendant to 15 years at hard labor. A hearing on the habitual offender bill of information was held after sentencing on December 1, 2016. After finding Defendant to be a fourth felony offender, the trial court vacated its previously imposed sentence and resentenced Defendant, pursuant to La. R.S. 15:529.1(4)(b)', to life imprisonment without benefit of probation, parole, or suspension of sentence. On December 10, 2016, Defendant filed a motion for reconsideration of sentence and a motion for appeal. The motion for appeal was granted on December 13, 2016. The motion for reconsideration of sentence was denied on February 15, 2017.[6] The instant appeal followed. ASSIGNMENTS OF ERROR ^Defendant alleges two counseled assignments of error on appeal: 1) the trial court erroneously granted unwarranted challenges for cause, and 2) the trial court erred in prohibiting the defense from impeaching Ms. Clark to reveal the full extent of the favorable treatment she received for her testimony. Defendant also alleges three pro se assignments of error: 1) there was insufficient evidence to support his conviction; 2) the trial court erred by failing to grant his motion to quash; and 3) the sentence imposed is excessive. LAW AND ANALYSIS Sufficiency of evidence[7] In his first pro se assignment of error, Defendant argues that the trial court erred in denying his motion for new trial as the evidence was insufficient to support his conviction for aggravated second degree battery.[8] Defendant maintains that the State failed to prove that he was the one who committed the crime and refers to his trial testimony where he denied his involvement. He asserts that the witnesses’ testimony was not credible and their testimony was insufficient to support the jury’s finding that he was involved in the aggravated second degree battery committed upon Carol Clark. In reviewing the sufficiency of the evidence, an appellate court-must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-674 (La. 6/29/01); 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La. App. 5 Cir. 5/11/10); 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11); 52 So.3d 885. This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La. App. 5 Cir. 5/12/09); 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10); 27 So.3d 297. This deference to.the fact-finder does not permit a reviewing court to decide . whether it. believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt ' beyond a reasonable doubt, but whether, upon review of the whole ' record, any rational' trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08); 985 So.2d 234, 240. In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La. App. 5 Cir. 5/26/04); 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La. App. 5 Cir. 3/11/08); 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09); 999 So.2d 745. I sin this case, Defendant was convicted of aggravated second degree battery. La. R.S. 14:34.7(A) defines aggravated second degree battery as “a battery committed with a dangerous-weapon when the offender intentionally inflicts serious bodily injury.” Aggravated second degree battery is a crime requiring- specific criminal intent. See State v. Fuller, 414 So.2d 306 (La. 1982). Specific intent is that state of. mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S., 14:10(1). Specific intent need not be .proven as a fact, but may be inferred from the circumstances and by the actions of the defendant.. Id. Defendant’s argument focuses on the failure of the State to prove beyond a reasonable doubt his identity as the perpetrator of -the, aggravated second' degree battery of Ms. Clark. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La. App. 5 Cir. 4/10/13); 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13); 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misiden-tification in order to carry its burden of proof. Id. In the present case, we find that the State presented sufficient evidence to support Defendant’s conviction of aggravated second degree battery. Here, Ms. Clark, the victim, identified Defendant immediately following the crime, as well as at trial, as the individual who ran her over with a vehicle. Positive identification by only one witness is sufficient to support a conviction. State v. Williams, 02-645 (La. App. 5 Cir. 11/26/02); 833 So.2d 497, 503, writ denied, 02-3182 (La. 4/25/03); 842 So.2d 398. Not only did she testify that Defendant hit her once with a vehicle, she described that after hitting her a first time, Defendant turned around and hit her a second time. Evidence was presented that showed the resultant collision caused severe injuries to Ms. Clark, including a broken leg. 17Both Defendant and the victim, Ms. Clark, testified at trial. While Ms. Clark identified Defendant as the perpetrator, Defendant denied his involvement but did not provide a concrete alibi. After hearing the testimony, the jury apparently chose to believe Ms. Clark’s version of events in rendering its verdict. When there is conflicting testimony about factual matters, the resolution of which depends on a .determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. Brown, 01-41 (La. App. 5 Cir. 5/30/01); 788 So.2d 694, 701. We find that the evidence established that Defendant utilized an automobile as a dangerous weapon and intentionally used force against Ms. Clark by running her over with it. Therefore, in reviewing the evidence in the light most favorable to the prosecution, we find that a rational jury could reasonably find Defendant guilty of aggravated second degree battery. Challenges for Cause In his first counseled assignment of error, Defendant contends that the trial court erred by excusing three potential jurors from the jury pool following the State’s challenges • for cause. Defendant contends that the trial court erred in excusing jurors Rthasia Terrell, Myjah Boyd, and Sharon Delaney.[9] As a result of the alleged error, Defendant maintains that the State was permitted a greater number of peremptory challenges than allowed by law. Defendant elaborates that the use of improper hypothetical questioning served to muddy the waters as to the thinking of the challenged jurors such that the use of their answers as a basis for a challenge for cause was suspect and improper. He notes that because there was corroborating evidence in this case, the-State’s suggestion that the jurors were to try a case with one uncorroborated witness was specious. RThe State responds that the trial court did not err in granting the State’s challenges for cause. Reviewing the entire record, the State contends'that each of the three jurors indicated unwillingness to convict based upon the testimony of one witness. The State avers the trial court had the benefit of seeing the facial expressions, vocal intonations, and other “tells” of thé prospective jurors, and after taking their entire responses inte account, struck the prospective jurors in question for cause, and a review of the record does not reveal an abuse of discretion. Defendant was tried and convicted of aggravated second degree battery, a. crime that is punishable with or without .hard labor. La. R.S. 14:34.7. In trials of offenses punishable by imprisonment with or without hard labor, each defendant shall .have six peremptory challenges, and the State shall have six for each defendant. La. C.Cr.P, art. 799. Here, the State used five of its six peremptory challenges, excusing jurors Caesar Ochoa, Anitria Thomas, Ruth Harmon, Paul Morales, and Jack Da-gostaro. An erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the State of more peremptory challenges than it is entitled to by law. La. C.Cr.P. art. 800. Therefore, to validly claim that the court made a reversible error, in this case, Defendant must prove that the trial court erroneously excused two or more jurors for cause. . The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. State v. Nelson, 09-807 (La. App. 5 Cir. 3/23/10); 39 So.3d 658, 661. Included in this right to an impartial jury is the right to an adequate voir dire to identify unqualified jurors. United States v. Beckner, 69 F.3d 1290, 1291 (5th Cir. 1995). Article I, § 17(A) of the Louisiana Constitution grants a criminal defendant the right to a full and complete voir dire. “The court, the state, and the defendant shall have the right to examine prospective jurors.” La. C.Cr.P. art. 786. The purpose of voir dire is to give counsel the ^opportunity to determine the qualifications of prospective jurors by testing their competency and impartiality and to formulate reasons for cause and peremptory challenges. State v. Ball, 00-2277 (La. 1/25/02); 824 So.2d 1089, 1110, cert. denied, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107 (2002). La. C.Cr.P. art. 797 sets forth the grounds for which a juror may be challenged for cause. Based upon the arguments, the most relevant ground here is that “[t]he juror will not accept the law as given to him by the court.” La. C.Cr.P. art. 797(4). “[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.” State v. Robertson, 92-2660 (La. 1/14/94); 630 So.2d 1278, 1281, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998), (quoting State v. Hallal, 557 So.2d 1388, 1389-90 (La. 1990)). The trial judge must look at the juror’s responses during his entire testimony, not just “correct,” isolated answers, or, for that matter, “incorrect,” isolated answers. Robertson, 630 So.2d at 1281 (quoting State v. Lee, 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991)). Although a court has discretion to restrict voir dire, it must nevertheless afford the attorneys wide latitude in examining prospective jurors as a means of giving effect to an accused’s right to a full voir dire. State v. Thibodeaux, 98-1673, (La. 9/8/99); 750 So.2d 916, 924, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Thus, while a trial court has control over the scope of jury selection and may limit voir dire examination accordingly, the limitations may not be so restrictive as to deprive counsel of a reasonable opportunity to determine grounds for challenges for cause and for the intelligent exercise of peremptory challenges. Id. | ^Nevertheless, Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or pre-judgment from the juror or which would pry into the juror’s opinions about issues to be resolved in the case. Thibodeaux, 750 So.2d at 924. Voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence to be offered at trial, nor hypothetical questions and questions of law which' call for any pre-judgment of supposed facts. State v. Bell, 477 So.2d 759, 766 (La. App. 1st Cir. 1985), writ denied, 481 So.2d 629 (La. 1986). However, it is permissible for voir dire questions to “reasonably explore the juror’s potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case.” State v. Duplessis, 457 So.2d 604, 606 (La. 1984). The trial court is granted broad discretion in regulating the conduct of voir dire, and its rulings will not be disturbed on appeal absent a clear showing of an abuse of discretion. La. C.Cr.P. art. 786; Ball, 824 So.2d at 1110. In evaluating the fairness of the trial judge’s ruling, the entire voir dire examination should be considered. State v. Housley, 05-502 (La. App. 5 Cir. 1/31/06); 922 So.2d 659, 662, writ denied, 06-1183 (La. 11/17/06); 942 So.2d 531. Juror Rthasia Terrell With respect to Ms. Terrell, Defendant notes that she was challenged by the State because she purportedly required more than one witness. Defendant argues that she advised the court, while thinking about a hypothetical, that she could not say “100 percent” “either way” how she might respond to a particular scenario of events. Defendant contends that this modesty is not grounds for a challenge for cause and the equivocation in her answers is an insufficient basis upon which to grant the State the advantage of an extra peremptory challenge. In At the start of the voir dire, one of the prosecutors, Andrew De Coste,[10] instructed the potential jurors that “[a]s it relates to witnesses, the law says that the testimony of one witness is enough to convict somebody.” During voir dire, Ms. Terrell indicated, in the context of this hypothetical, that she would not be able to convict “based on one witness” because if “one witness testified [she] would not find them credible because there [was] nobody else to back them up.” The prosecutor then presented Ms. Terrell with a hypothetical rape case where only the victim testified. Ms. Terrell was asked that if she believed the rape victim’s story, would she be able to convict the accused rapist, and she indicated she would “still hear his side, too” and that she would not “take one person’s side of the story.” The prosecutor explained that the accused rapist in the hypothetical, like Defendant, “doesn’t have to do anything” in his defense. He asked Ms. Terrell again that if she just heard “Jrom the woman who said she was raped” and if Ms. Terrell believed her, could she find the man guilty, and she indicated yes. The prosecutor, trying to reconcile these differences, asked, “what is the difference between that and me and the horse?” Ms. Terrell stated that the rape scenario was more serious, indicating that the “seriousness of the crime matters.” At the bench, the State exercised its first challenge for cause on Ms. Terrell, with the trial court recalling that “she said she needed more than one witness.” The trial court called Ms. Terrell to the bench, and the following exchange occurred: THE COURT: I believe you had said in response to the State that you need more than one witness in order to convict. MS. TERRELL: Correct. THE COURT: If you were convinced beyond a reasonable doubt by testimony of one witness could u (sic) convict? |12MS. TERRELL: I wouldn’t be able to on one person. MR. SCOTT: What if you heard from witnesses who were not eyewitnesses, police officers, doctors, are those the types of witnesses you are saying you would want to hear from, or another person who actually saw something knowing sometimes you don’t have one? MS. TERRELL: Right. If it was someone other than the involved party, maybe, but I wouldn’t be able to say 100 percent. Does that make sense? MR. SCOTT: Can you explain it a little bit more? That gives you more than one witness. MS. TERRELL: In this case -if it was like the two parties that are involved, if you are saying that one of them would testify and there would be no one else, I wouldn’t be able to say yes 100 percent that I would be able to convict just* based off of that. If it were the two people involved and a police officer or a doctor that gave a statement, I still can’t say that I would be able to say 100 percent either way. THE COURT: Okay. Thank you. Defense counsel argued that he did not think “that gives rise to cause.” In this case, there was a 9-1-1 call from a neighbor, “even though she is not going to testify,” and that Ms; Terrell was “going to hear that,” arguing it was a “case by case basis.” The State responded that Ms.' Terrell stated, “if she believed them she couldn’t 100 percent say she could convict them.” The trial court struck her for cause over defense counsel’s objection. Next, the State challenged juror Caesar Ochoa for cause. During voir dire, Mr. Ochoa indicated that based upon “one victim, one eyewitness,” he “would have to see a whole lot more evidence in the whole process” to convict. The trial court called him to the bench to question him further on that matter, asking him if there was “one witness who testifies and [he was]' convinced beyond a reasonable doubt of that witness’s testimony, [could he] convict them?” Mr. Ochoa responded in the affirmative, and the trial court denied the State’s challenge for cause. Under Louisiana law, a victim’s or witness’ testimony alone is usually sufficient to support'the verdict. State v. Munson, 12-327 (La. App. 5 Cir. 13); 115 So.3d 6, 13, writ denied, 13-1083 (La. 11/22/13); 126 So.3d 476. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Turner, 05-75 (La. App. 5 Cir. 5/31/05); 904 So.2d 816, 823, writ denied, 05-2591 (La. 5/26/06); 930 So.2d 20. In this case, Ms. Terrell indicated that she would not, or could not, accept this legal standard. She indicated that she would apply a different standard to a rape case as opposed to other cases, indicating that seriousness of the crime mattered. She was 'told the law allowed the State to prove its case through testimonial evidence alone in a criminal case and expressed her inability to convict on the testimony of one witness. Unlike Mr. Ochoa, who initially expressed similar concerns regarding convictions based on lack of physical evidence and was later rehabilitated, Ms. Terrell’s responses seriously called into question her ability to act as a juror in this* case. Accordingly,- we - find that the trial court did not abuse its broad discretion in granting the State’s challenge for cause with regard to Ms. Terrell, given her inability to follow the law.[11] Juror Myjah Boyd Ms.-Boyd also expressed her reluctance to convict someone based upon the testimony of a single- witness. With respect to Ms. Boyd, Defendant argues that she actually said she would be able to convict if convinced beyond a reasonable doubt and only could not convict if she thought the victim was lying. Defendant contends that while her answers may not have been that clear, her responses to poorly constructed hypotheticals did not provide a basis for a challenge for cause. | 14A1so using the rape hypothetical during voir dire, the prosecutor asked Ms. Boyd if she could convict based on the word of one witness, with no physical evidence to corroborate it, and she responded that she did not think she “would be able to convict somebody off of a sole testimony of one person.” The prosecutor inquired further, asking, “even if the law says you can, you can’t?” Ms. Boyd responded, “Yes, I don’t think so.” At the bench, the State moved to strike Ms. Boyd for cause for the “same issue.” The trial court requested her presence at the bench where she was further questioned: THE COURT: Ms. Boyd, would you step up here, please. I guess the whole thing revolved around your answers, and that you couldn’t convict based upon the testimony of one witness, and I think that was one eyewitness. ' MS. BOYD: Yeah. Exactly. THE COURT: Suppose the State put on other witnesses so that it was not a . one witness case, but it was only one witness as it pertains to the identity of the perpetrator. If you believe that witness beyond a reasonable doubt you are telling me you could not convict? MS, BOYD: No, if I believe them beyond a reasonable doubt, the eyewitness, but I would need the , police as well. For example, the rape happened,. I would need the police to,say when she came in .she was like this, you know, she was distraught and everything else, but I wouldn’t just take the person’s comments. THE COURT: If some- lady got on the witness stand and said I was raped and that’s the person, that did it, and you believed it beyond a reasonable doubt you could not convict? MS. BOYD: I would be able to convict if I believe it beyond a reasonable doubt. THE COURT: Mr. Scott? ' MR. SCOTT: I have no questions. MR. DE COSTE: I guess the question I asked you before, .right, if you got the one woman who comes and testified and says they are (sic) raped, and the defendant sitting silent and you believe her beyond a reasonable doubt, you could convict him? |1fiMS. BOYD: Yes. I thought you meant if it was just her, and the,evidence wasn’t— MR. DE COSTE: If it is just her, and then let’s say a police officer who says he talked to her and she was crying, because she is crying that is enough for you to convict the guy of the ■ rape? MS. BOYD: Yeah, the police officer along with the evidence and everything, MR. DE COSTE: What do you mean evidence and everything? MS. BOYD: The evidence, like if there was a struggle or if there was a gun involved. . , MR. DE .COSTE: But we are talking about this one woman on the jury (sic) who comes in and says she is raped. The police officer says I met with her at the •hospital, she was distraught, -no D.N.A., she told me what happened. That is all you got. MS. BOYD: If I wouldn’t believe her beyond a reasonable doubt, I would be lying if I just would convict him and I didn’t believe her. MR. SCOTT: She is weighing it whether or not it is a beyond a reasonable doubt, or not, Judge. MR. DE COSTE: I don’t think she is. She is saying there needs to be other corroborating evidence. THE COURT: If there is no other corroborating evidence. MS. BOYD: I couldn’t be able to do it. THE COURT: Any other questions? MR. SCOTT: You wouldn’t be able to do it because you would not believe her, or you would believe her and just say you are sh-t out of luck, I’m not going to convict' this guy? MS. BOYD: Yés, I would need something more. Defense counsel remarked that she “wouldn’t believe it without corroborating evidence,” and the trial court struck Ms. Boyd for cause. Defense counsel then lodged a Batson[12] challenge, noting that “all the sustained causes [were] black females,” and that was “three out of the four black people on this panel.” The trial court commented that all the challenges had “not been based on l^race” but were “based upon the fact that they need more than one witness.” Defense counsel argued that was “not what Ms. Boyd said,” and the prosecutor explained that she “just asked her” if she needed “more than one witness, and she said yes.” Defense counsel argued that it was “because she would not believe that witness without more,” and the trial court noted his objection. First; defense counsel’s objection coincided with thé denial of his Batson challenge. With regard to Ms. Boyd, defense counsel failed to provide the trial court-with reasons for his objection regarding the State’s challenge for cause, other than invoking a Batson objection. On appeal, Defendant argues Ms. Boyd was erroneously struck for cause when her answers did not provide a proper basis. La. C.Cr.P. art. 841 provides that an error cannot be availed of after verdict unless it was objected to at the time of the occurrence. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection. La. C.Cr.P. art. 841; State v. Brooks, 12-226 (La. App. 5 Cir. 10/30/12); 103 So.3d 608, 613-14, writ denied, 12-2478 (La. 4/19/13); 111 So.3d 1030. Considering the foregoing, we decline review of this issue with respect to the State’s challenge for cause exercised on Ms. Boyd because it is not properly before the Court. Juror Sharon Delaney With regard to Ms. Delaney, Defendant argues that she only expressed reluctance to convict someone based upon the completely uncorroborated word of a lone witness. Even so, Defendant argues that her equivocal answers were given in response to hypothetical questions that were confusing, fluid, and leading. He argues that she did not tell the court that she could not follow the law, and her answers did not rise to grounds for a challenge for cause. Also using the rape hypothetical during voir dire, the prosecutor asked Ms. Delaney that if she believed the victim and “prove[d] to her satisfaction whatever 117charge exist[ed],” could she find the person accused guilty. Ms; Delaney expressed that she “would find it hard to convict without more evidence” and that “every case is going to be different,” so it was “really hard to say.” The prosecutor asked her if it would be impossible, and Ms. Delaney responded that it was “hard to say.” The prosecutor continued, presenting Ms. Delaney with the following scenario: MR. DE COSTE: The woman tells you her story. You believe her. That is all you got, her word. The defendant sits with his attorney and doesn’t say anything. You believe what she said, you believe the Voracity [sic] of what she has told you. You have to go back and deliberate am I going to find this guy guilty or not. What you are saying is it would be close to impossible to convict? MS. DELANEY: Based on that, yes. At the bench, the State moved to strike Ms. Delaney for cause, with defense counsel noting it was for “the same issue.” She was questioned further: THE COURT: Ms. Delaney, we have a question or two. I believe in response to the State’s question you said you would need more than one witness. MS. DELANEY: I would think I would need more than one. THE COURT: If there was only one witness and you were convinced beyond a reasonable doubt of that witness’s testimony, you are telling me you could not convict the person based on that? MS. DELANEY: I would have a hard, hard time, because there is a lot of people’s lives involved, even if he is not guilty or is guilty.. .1 would have a hard time based on how it would affect his life. Being brought into court has already affected his life in a negative way. I would be hard pressed. It would depend on the circumstances. It is hard to ' say. • ■ MR; SCOTT: If you hear from more than one witness, but only one is the victim arid the eyewitness, because there is only one victim, it was more than one person collaborate everything? [sic] MS. DELANEY: If it is one person’s word against the other person’s word, I don’t know. MR. DE COSTE: You are just saying you would not believe them beyond a reasonable doubt? 11sMS. DELANEY: Possibly not, no. Defense counsel objected “to the cause for the, reason stated,” with the trial court noting the objection. ■ Ms. Delaney, like Ms. Terrell, expressed her reluctance to convict someone based upon the testimony of a single witness. She indicated uncertainty ori being able to convict an individual on one witness’ testimony alone. Her inability to follow the law was exhibited through her reluctant responses, e.g., “possibly not,” “I would be hard pressed,” and “it is hard to say.” This inability was apparent to the trial court after attempts at rehabilitation concerning her views failed. After scrutinizing the record as a whole, Ms. Delaney’s responses reflect an inability to render a judgment according to the law. Thus, we find that the trial court did not abuse its discretion in granting the State’s challenge for cause as to Ms. Delaney, given her inability to follow the law.[13] Cross-examination of Ms. Clark In this counseled assignment of error, Defendant asserts that Ms. Clark, the victim in this case, had two active attachments subjecting her to arrest as she testified in open court. Defendant contends the State, and trial court knew, she would not be arrested on these attachments, and Defendant was prohibited from revealing this information to the jury. Defendant avers that he was barred from questioning Ms. Clark about the substantial benefit she received either by intervention of the State or perhaps the trial court, but regardless of the source of the benefit, and argues the bias that was likely to flow from such forbearance was a subject within the scope of proper cross-examination. Defendant alleges that this error was not harmless as the case hinged on the credibility of Ms. Clark, and the |1fldenial of the right to confront Ms. Clark about her favorable treatment denied him his Sixth Amendment right of .confrontation. Such argument was also made in Defendant’s motion for. new trial—that trial counsel was not allowed to cross-examine Ms. Clark regarding favorable treatment, to wit: not being arrested despite open attachments. The State responds that the trial court did not err in prohibiting defense counsel from cross-examining Ms. Clark regarding her attachments. The State first notes that even though raised in his motion for new trial, this issue was not properly preserved under the contemporaneous objection rule. Nevertheless, the State argues that Defendant was able to impeach Ms. Clark’s credibility by exposing her prior convictions and her pending charges and was able to elicit that she had outstanding attachments. The State avers that any error was harmless, as Ms. Clark was the victim in this case who consistently identified Defendant as her attacker, and it is inconceivable that had the jury known more about her outstanding attachments, the verdict would have been different. Following the testimony of Javon Paul, Ms. Clark’s granddaughter, the trial court indicated to its bailiff and counselors to approach the bench where the following exchange occurred: THE COURT: They are telling me she has an attachment, so after she leaves the courtroom check to see if it is outstanding, and if it is outstanding pick her up. MR. SCOTT: Judge, about that, I looked in Jeffnet this morning. I have printouts from it. There is two [sic] from Second Parish on her, both for theft. We are talking about the witness? THE COURT: No, she has an attachment, too. ' MR. SCOTT: Uh-huh (AFFIRMATIVE RESPONSE). For a pending charge? THE COURT: I don’t know what it was. She was attached on a seatbelt. Let her go. J^MR. SCOTT: Okay. ' * * * MR. SCOTT: When it comes to the victim she does have pending charges and attachments. I’m allowed to cross-examine her, not on the nature of the charges, but the fact that she does have pending charges in this parish where this case is being prosecuted, if she has any hope of receiving favorable treatment for the testimony. THE COURT: I don’t think you can. MR. SCOTT: Yes. I didn’t even get the • case law on this. MS. BECKNER: There is no plea agreement. MR. SCOTT: It is Code of Evidence 607, and there is a federal case on it,..I can pull up a motion for you in a different case that says we understand he can cross-examine them about favorable treatment, but not go into the facts of the case.- The record, indicates following this exchange, the trial court held a recess, but the issue was not brought up again on the record until the following day of trial, before Ms. Clark took the stand. Before Ms. Clark took the stand for her testimony, the following, exchange occurred: MR. DE COSTE: The victim brought the paperwork. Supposedly when they went there she didn’t go in, but her husband signed for her, but she has a court date and she is still attached. THE COURT: We told this woman to go handle this. MR. DE COSTE: I guess we should have been explicit and told her to personally handle it. What is your position regarding attachment? It is just as it was yesterday. THE COURT: Since the case is so screwed up to begin with I’m going to allow him to ask her, because it goes tó her credibility. MR. DE COSTE: Are you going to have her arrested? THE COURT: I’m not going to arrest her. They have a date for Monday? MR. DE COSTE: Yeah. THE COURT: I’m going to order her to go over there on Monday— la,MR. DE COSTE: Okay. THE COURT: —and get those recalled, and then I’m going to find out whether or not she did it or not, and if she didn’t I’m going to issue an attachment for her, and send somebody out to pick her up and hold her in contempt. MR. DE COSTE: Assuming everything works out, if he has a sentencing date, . do you want to have her served for the sentencing so if she doesn’t handle that— THE COURT: No, I’m going to see what happens on Monday. By Tuesday if she has not taken care of it, I’m going to issue an attachment for her arrest. MR. DE COSTE: That’s fíne. All right. . THE COURT: And she is going to do six months contempt. - . MR. DE COSTE: We’ll let her know after everything. During Ms. Clark’s cross-examination,' the following exchange occurred: MR. SCOTT: You are aware that you have two attachments right now? MS. CLARK: Yes, I am aware of it. * * * MR. SCOTT: Do you bélieve by sticking to your story and telling—giving ■ favorable evidence for the State you are going to get'some kind of favorable treatment for that? MS. CLARK: No, sir. It was—it is not, and it is not going to be nothing favorable for the State. I’m here for my leg. MR. SCOTT: Are you aware of what normally happens to people who have attachments for their arrest? MR. DE COSTE: Objection,-Your Hon- or. MS. BECKNER: Objection. THE COURT: Sustained. MR. SCOTT: Do you expect to get arrested because of your attachments? MS. BECKNER: Objection; MR. DE COSTE: Objection. I22MR. SCOTT: Can we approach? THE COURT: Yes. (Bench conference) MR. SCOTT: Attachments get you arrested. She is not getting arrested. * * * MR. SCOTT: It is a matter of record. She is already getting favorable treatment because she is not getting arrested. That is being put on the record in this case.’ MS. BECKNER: We have.nothing to . do with her not getting arrested. MR. SCOTT: It is the fact that it is not happening. THE COURT: She knows to be there Monday. MR. SCOTT: She has open attachments. MR. DE COSTE: The only person to affect her arrest is him and you cannot bring that in front of the jury. THE COURT: You can redirect and try to clear it up. MR. DE COSTE: You can’t talk about a judicial proceeding. MR. SCOTT: It is favorable treatment. MR. DE COSTE: No it isn’t. MR. SCOTT: She can still get arrested. THE COURT: So I should tell her she is getting arrested? MR. SCOTT: No you don’t tell her she is getting arrested. MS. BECKNER: I already had this conversation. MR. SCOTT: And then between now and then— MS. BECKNER: She has attachments. MR. SCOTT: Between now and then it has been put on the record that she’ll not be arrested, despite the fact that she has open attachments. MR. DE COSTE: Who has control? Does the State have control? | aaMR. SCOTT: I recall y’all requesting— MR. DE COSTE: I didn’t request anything. MS. BECKNER: Calm down. THE COURT: I’ll have her arrested on this. MR. SCOTT: Okay. A defendant must make a contemporaneous objection “to a claimed confrontation violation” in order to preserve it for appellate review. State v. Vallo, 13-1369 (La. 1/10/14); 131 So.3d 835, 837. The contemporaneous objection rule, La. C.Cr.P. art. 841(A), not only provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence,” the rule also requires that a defendant state the grounds for the objection. State v. Smith, 11-638 (La. App. 5 Cir. 3/13/12); 90 So.3d 1114, 1123. Further, a defendant is limited on appeal to those grounds articulated at trial. State v. Snyder, (La. App. 5 Cir. 10/9/13); 128 So.3d 370, 377, writ denied, 13-2647 (La. 4/25/14); 138 So.3d 643. The Sixth Amendment to the United States Constitution guarantees the right of the accused in a criminal prosecution “to be confronted with the witnesses against him.” Additionally, the confrontation clause of the Louisiana Constitution directly affords the accused the right to “confront and cross-examine the witness against him....” La. Const. Art. I, Sec. 16. The credibility of a witness may be attacked by any party, including the party calling him. La. C.E. art. 607(A). The right to impeach a witness for bias or interest is encompassed in the right of confrontation and is specifically dictated by La. C.E. art. 607(D). State v. Hollins, 97-627 (La. App. 5 Cir. 11/25/97); 704 So.2d 307, 309, writ denied, 99-507 (La. 8/25/99); 747 So.2d 50. However, La. C.E. art. 608(B) provides: “Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of ^attacking his character for truthfulness, other than conviction of a crime as provided in Articles 609 and 609.1 or as constitutionally required.” La. C.E. art. 609.1(B) provides that “[generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.” Despite the general rule, the possibility that the prosecution may have leverage over a witness due to that witness’ pending criminal charges is recognized as a valid area of cross-examination. State v. Wiley, 10-811 (La. App. 5 Cir. 4/26/11); 68 So.3d 583, 592, writ denied, 11-1263 (La. 3/30/12); 85 So.3d 106 (citing State v. Rankin, 465 So.2d 679, 681 (La. 1985); State v. Brady, 381 So.2d 819, 822 (La. 1980)). In State v. Schexnayder, 96-98 (La. App. 5 Cir. 11/26/96); 685 So.2d 357, 368, writ denied, 97-2251 (La. 1/16/98); 706 So.2d 973, defense counsel requested that he be able to cross-examine an eyewitness regarding outstanding attachments on him at the time of the victim’s murder. The defense counsel claimed that he wanted to show that information given to the police and testified to at trial by the eyewitness was influenced by the State’s promise of favorable treatment with respect to the open attachments. Additionally, the eyewitness was on probation at the time of the murder. The eyewitness stated that he had not been promised anything in exchange for his police statements. However, one of the detectives did tell the eyewitness that he would not act on the attachments for him on that night. That detective testified that he did not promise the eyewitness anything in exchange for the identification. According to the detective, he did not discover the open attachments on the eyewitness until after the identification was made. Id. This Court found that although the eyewitness and the detective both testified that there was no agreement made in exchange for the information, the | ^detective’s failure to act immediately on eyewitness’ attachments might be construed as giving favorable treatment in exchange for the eyewitness’ continued cooperation.' Id. This Court found that defense counsel should have been allowed to question the eyewitness about any expectations he may have had of favorable treatment, even though there was no proof of an overt ágreement with the State. Id. at 369. However, this Court noted that, even if the trial court improperly restricted defense counsel’s cross-examination of the eyewitness, the error was harmless. Id. In addition, this Court noted other evidence at trial corroborated the eyewitness’ testimony. Therefore, the guilty verdict was not attributable to any error that may have occurred when the trial court refused to allow the defense counsel to question the eyewitness concerning his bias. Id. In State v. Merwin, 07-807 (La. App. 5 Cir. 4/15/08); 984 So.2d 842, the defendant argued that the trial court erred in not allowing her to cross-examine the victim concerning his probation violation and the resultant outstanding warrant in Georgia. This Court stated that defense counsel was unable to address the victim’s impartiality or bias, since she was unable to question him about his outstanding warrant for a probation violation or about whether Louisiana State officials had discussed with or ensured the victim that he would not be prosecuted for the probation violation in Georgia. Id. at 846. However, this Court found that any error was harmless because the witness was the victim, he had an interest in pursuing the matter without coercion, and other evidence at trial corroborated the victim’s testimony. Id. at 847. In the instant case, defense counsel was able to question Ms. Clark about her prior convictions; Ms. 'Clark acknowledged she had prior convictions, one for child desertion and two for theft. Defense counsel also questioned Ms. Clark about “pending theft charges” that she was unaware of but did not deny. Notably, defense counsel was able to briefly question Ms. Clark regarding her expectations |2fiof favorable treatment regarding pending attachments. She indicated that she was aware she had two pending attachments for her arrest but-that she did not expect favorable treatment from the State for “sticking to [her] story.” The State only objected after Ms. Clark indicated that she did not expect favorable treatment when defense counsel questioned her further on the matter. .Ms. Clark did not express that she had a specific agreement with the State.. . Also in. this case, Ms. Clark was the victim, not just a witness. While she may have had an interest in not being arrested on the pending attachments, her interest in having Defendant prosecuted for running her over with his car outweighed that interest. Although the questioning was somewhat limited, Defendant was not deprived of his right to confrontation. Defense counsel was able to cross-examine Ms. Clark regarding her numerous convictions and was able to attack her credibility in other ways. Accordingly, we find the guilty verdict was not attributable to the trial court’s refusal to allow, defense counsel to question Ms. Clark further concerning any favorable treatment. Denial pf Motion-to Quash In this pro se assignment of error, Defendant argues that his predicate convictions are invalid for habitual offender' bill purposes because the evidence presented by the State does not show that the trial judge specifically addressed his waiv-" er of his rights under Boykin—his right against self-incrimination, right to trial by jury, and right to confront one’s accusers—because the transcripts from his guilty pleas were not introduced. He further argues that his predicate convictions are invalid.to enhance his conviction because evidence presented does not show that he made an express and. knowing waiver of his constitutional rights. He also avers that the State did not prove that he was represented by. counsel when his prior guilty pleas were entered. | p.7Here, Defendant was adjudicated a fourth felony offender. To prove a defendant is a habitual offender, the State must initially prove the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies. State v. Fleming, 04-1218 (La. App. 5 Cir. 4/26/05); 902 So.2d 451, 455, writ denied, 05-1715 (La. 2/10/06); 924 So.2d 161. The latter can be established by expert testimony matching the accused’s fingerprints with those in the record from the prior proceedings. Id. The Louisiana Supreme Court in State v. Shelton, 621 So.2d 769, 779-80 (La. 1993) set forth the framework for addressing a defendant’s challenge to a predicate guilty plea in a habitual offender proceeding: If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas, and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce • some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of. proving the .constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights. In State v. Thomas, 06-654 (La. App. 5 Cir. 1/16/07); 951 So.2d 372, 379, writs denied, 07-464 (La. 11/21/07); 967 So.2d 1153 and 08-2267 (La. 6/19/09); 10 So.3d 726, the defendant argued that the State failed to prove he was properly “Boykin-ized” before entering guilty pleas to the predicate felonies. This Court noted that when the defendant denied the allegations in the habitual offender bill, the‘burden shifted to the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel. This Court reasoned that the State | ?Rwas not, as the defendant contended, required to produce Boykin transcripts to meet that burden. The certified copies of the predicate guilty pleas (including waiver of rights forms listing the three Boykin rights) produced by the State established both the existence of the guilty pleas and that the defendant was represented by an attorney when he entered them. The State’s production of the pertinent waiver of rights/guilty plea forms was sufficient to satisfy, its burden of proof. This Court found that the burden shifted back to the defendant- to produce some affirmative evidence of .a procedural irregularity in connection with his guilty pleas, and he failed to do so, therefore, the burden did not shift back to the State to prove the guilty pleas were constitutionally sound. In this case, Defendant denied the allegations of the habitual offender bill when he filed his written objection to the habitual offender bill of information and incorporated motion to quash challenging his predicate guilty pleas. Therefore, the burden shifted to the State to prove the existence of the- prior guilty pleas and that Defendant was -represented by counsel when it was taken. The State met this burden when it introduced into evidence; the certified conviction packets from Defendant’s four predicate guilty pleas, including bills of information with fingerprints, commitments, and Defendant’s waiver of rights forms of his predicate guilty pleas, signed by 'Defendant, his attorney, and the trial judge. The waiver of rights forms- introduced by the State for all four predicate pleas include a waiver of the three essential Boykin rights. Defendant also indicated on the forms that he had not been forced, coerced, or threatened to enter his guilty pleas. This evidence also established that Defendant was represented by counsel at the time of his pleas; The State proved the identity of Defendant in the predicate pleas, through the testimony of Kortni Si-non, a fingerprint expert, who linked the fingerprints contained in the State’s exhibits to Defendant. Consequently, the burden shifted back to Defendant-to produce some affirmative 1 ^evidence showing an infringement of his rights or a procedural irregularity in -the taking of his plea. As in Thomas’, the State was not required to produce the Boykin transcripts to meet its initial burden as Defendant argues. Accordingly, we find .that Defendant has failed to present affirmative evidence of any infringement on his rights or procedural irregularity in the taking of his predicate pleas. Excessive Sentence In this pro se assignment of error, Defendant argues that .the trial court erred in denying his motion to, reconsider sentence. He argues that his enhanced sentence is constitutionally excessive. After being adjudicated a fourth felony-offender, the trial court vacated Defendant’s previous sentence and sentenced him to life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant filed a motion to reconsider sentence on December 10, 2016, arguing that his sentence was excessive, that the sentence imposed should be reconsidered, and that a lower sentence should be imposed that promotes fairness and state and federal constitutional standards. On February 15, 2017, a hearing on the motion was held, and Defendant challenged his life sentence as excessive as he was “convicted in a crime that did not result in the death of anyone.” The State responded that based on Defendant’s status as a quadruple felony offender, a mandatory life sentence was imposed, and contended that based on the facts of Defendant’s prior offenses, the sentence was proper. The trial court denied the motion. Where the defendant’s motion to reconsider -sentence alleges mere exces-siveness of sentence, the reviewing court is limited to only a review of whether the sentence is constitutionally excessive. La. C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059, 1059-60 (La. 1993). Accordingly, due to Defendant’s bare claim of exces-siveness of sentence in his motion, Defendant’s sentence is limited to a review for constitutional excessiveness. , IsnThe Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it may be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La. 1/14/03); 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La. App. 5 Cir. 9/28/04); 885 So.2d 618, 622. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Taylor, 06-839 (La. App. 5 Cir. 3/13/07); 956 So.2d 25, 27, writ denied, 06-0859 (La. 6/15/07); 958 So.2d 1179. When a trial court determines that the minimum sentence mandated by La. R.S. 15:529.1 makes no “measurable contribution to' acceptable goals of punishment,” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce the sentence to one that would not be constitutionally excessive. Taylor, 956 So.2d at 27-28; State v. Douglas, 03-1266 (La. App. 5 Cir. 2/23/04); 868 So.2d 896, 900, writ denied, 04-0955 (La. 10/1/04); 883 So.2d 1006 (citing State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993); State v. Ventress, 01-1165 (La. App. 5 Cir. 4/30/02); 817 So.2d 377, 383). However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. Taylor, 956 So.2d at 28 (citing State v. Johnson, 97-1906 (La. 3/4/98); 709 So.2d 672, 676); Douglas, 868 So.2d at 900 (citing Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La. App. 5 Cir. 4/10/02); 817 So.2d 223, 226, writ denied, 02-1489 (La. 5/9/03); 843 So.2d 388). |31In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is “exceptional, which ... means that because ■ of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.” Id. (citing Johnson, 709 So.2d at 676). Downward departures from the minimum sentence mandated by La. R.S. 15:529.1 should only occur in rare situations. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Taylor, 956 So.2d at 28. Compliance with sentencing guidelines pursuant to La. C.Cr.P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law. State v. Jenkins, 07-586 (La. App. 5 Cir. 1/22/08); 977 So.2d 142, 148 (citing State v. Johnson, 01-0842 (La. App. 5 Cir. 2/13/02); 812 So.2d 106, 118, writ denied, 02-1037 (La. 3/21/03); 840 So.2d 532). It is first noted that Defendant’s sentence is within the statutory limits. At the time of the offense,[14] La. R.S. 15:529.1(A) provided in pertinent part: (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then: [[Image here]] (b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime ' punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. | agHere, Defendant’s fifth and underlying conviction was for aggravated second degree battery, in violation of La. R.S. 14:34.7, which is defined as a crime of violence. That offense was punishable by imprisonment with or without hard labor for not more than 15 years. The State also proved that Defendant had four predicate felony convictions, ‘including distribution of cocaine, in violation of La. R.S. 40:967(A); false representation of a controlled dangerous substance, to wit: cocaine, in violation of La. R;S. 40:971.1; second degree battery, in violation of La. R.S. 14:34.1; and armed robbery, in- violation of La. R.S. 14:64. - La. R.S. 14:2(B) defines second degree battery, armed robbery, and aggravated second degree battery as crimes of violence. See La. R.S; 14:2(B)(6), (21), and (31). Further, La. R.S. 40:967(A) was defined as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more.[15] Thus, the State proved that Defendant had two prior felonies defined as crimes of violence. Pursuant to La. R.S. 15:529.1(A)(l)(c)(ii), the sentence applicable to Defendant' was mandatory life imprisonment without benefit of parole, probation, or suspension of sentence, which was the sentenced imposed. Additionally, this Court has found that if the trial judge who imposed sentence on a defendant’s underlying conviction is the same • judge who imposes the enhanced sentence in a multiple offender adjudication, that judge is deemed to be aware of the nature of the crime for the underlying conviction. State v. Woods, 09-399 (La. App. 5 Cir. 3/9/10); 38 So.3d 391, 412, writ denied, 10-0784 (La. 10/29/10); 48 So.3d 1096. In the instant case, in light of the fact that the trial judge who presided over Defendant’s conviction and sentencing on his underlying offense was the same judge who presided over Defendant’s adjudication and I ¡«sentencing as a habitual offender, we find that the trial judge was aware that Defendant committed aggravated second degree battery upon Ms., Clark and was aware of his criminal history. The record further reflects Defendant’s propensity to continually commit violent crimes as evidenced by the instant conviction and. his underlying convictions for second degree battery and armed robbery, all of which have been defined as crimes of violence under La. R.S. 14:2. Defendant’s criminal history of violence is precisely what the Habitual Offender Law was designed to deter and punish. See Taylor, 06-839, 956 So.2d at 28. The Louisiana Supreme Court has noted that La. R.S. 15:529.1 treats the défendant with multiple felony convictions “as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law.” State v. Johnson, 97-1906 (La. 3/4/98); 709 So.2d 672, 677. Moreover, this Court -has held that repeat offenders are to receive serious sentences. State v. Carter, 96-358 (La. App. 5 Cir. 11/26/96); 685 So.2d 346, 353. In State v. Wise, 14-378 (La. App. 5 Cir. 10/15/14); 182 So.3d 63, 72, writ denied, 14-2406 (La. 9/18/15); 178 So.3d 143, the ■ defendant’s underlying conviction was attempted simple robbery, and his three prior felony convictions were attempted simple robbery, first degree robbery, and aggravated battery upon a police officer. In Wise, this Court after considering .that , the record reflected that the nature oí the instant offense was very' serious and that the defendant had an extensive criminal history consisting of violent crimes, found the defendant’s enhanced life sentence without benefits as a fourth felony offender was not excessive. Further, the record in.this case reflects that Defendant failed to produce any evidence to rebut the presumption of constitutionality of, the sentence. Based pn the foregoing, we find that Defendant has not shown exceptional circumstances ^necessary to successfully rebut the presumption of constitutionality of the mandatory life sentence. Additionally, considering that the record reflects that'the nature of the instant offense was very serious and that Defendant has an extensive criminal history consisting of violent crimes, we find that the mandatory life sentence as a fourth felony offender was not excessive. ■ Errors Patent Discussion The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review found no errors that require corrective action. DECREE For the foregoing reasons, we affirm Defendant’s conviction and sentence, AFFIRMED . See State v. Harris, 16-K-490 (La. App. 5 Cir. 8/26/16) (unpublished writ disposition). . Deputy Jesus Falcon discovered through listening to Defendant’s jailhouse phone calls that Defendant intended to sell his SUV, which was located at his mother's home in Algiers. Ms. Clark identified that vehicle as the one that struck her through photographs. . Efforts were made to locate Mr. Taylor during the investigation but were unsuccessful. He did not testify at trial. . The State and defense counsel stipulated to the authenticity of the 9-1-1 call, which was admitted into evidence and published to the jury. . The amended habitual bill of information added a predicate offense and changed another predicate offense. . Pursuant to La. C.Cr.P. art. 916, the trial court maintained jurisdiction to rule on the motion to reconsider sentence after granting the appeal. See La. C.Cr.P. art. 916. . When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court first determines the sufficiency of the evidence. State v. Griffin, 14-251 (La. App. 5 Cir. 3/11/15); 169 So.3d 473, 483, citing State v. Hearold, 603 So.2d 731, 734 (La. 1992). . Defense counsel filed a motion for new trial arguing: 1) the verdict was contrary to the law and evidence in that the victim's testimony contradicted the physical evidence, 2) trial counsel was not allowed to cross-examine the victim regarding favorablé' treatment, and 3) the ends of justice would be served by, the granting of a new trial considering the totality of the errors. Defendant also made an oral pro se motion for new trial urging that his Sixth Amendment rights were violated because he was denied the right to cross-examine the victim himself. Both motions were denied by the trial court. . It is noted that in Defendant’s appellate brief, he initially complains about jurors Terrell, Boyd, and Smith, but it appears that was in error as Defendant later more specifically contends juror Delaney was improperly • struck, It is also noted that these three jurors were from the same venire p'anel; . The prosecutors in this case were Andrew De Coste and Brittany Beckner, and defense counsel was Brad Scott. . See Munson, 115 So.3d at 13, where a juror indicated that she could not apply the legal standard that a witness’ testimony alone is sufficient to support a verdict. She also indicated she would' apply a different standard to murder cases as opposed to other cases, Although she was told that the law allowed the State to prove its case through testimonial evidence alone in any criminal case, including a murder trial, she indicated that in a murder trial, she would need physical evidence before "weighting] in on a murder.” She further expressed that she could convict on testimony alone on a "lesser” offense but that she could not do so with respect to a murder case. Accordingly, this Court found that the trial court did not abuse its discretion in granting the State’s challenge for cause. Id. at 14. . Batson v. Kentucky, 476 U.S. 79, 94-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). . See Munson, 115 So.3d at 14, where’another juror indicated uncertainty on being able to convict an individual on witness testimony alone. Her inability to follow the law was exhibited through her reluctant responses, e.g. "I'm not really sure,” "I just don’t think,” and “I would have a hard time.” This Court found that her responses reflected a bias, prejudice, or inability to render a judgment according to the law, and determined that the trial court did not abuse its discretion in granting the State’s challenge for cause'. . The Louisiana Supreme Court has held a defendant should be sentenced pursuant to the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense. State v. Parker, 03-0924 (La. 4/14/04); 871 So.2d 317, 326. . La. R.S. 40:967(B)(4)(b) provided for a term of imprisonment at hard labor for not less than two years nor more than 30 years, with the first two years without benefit of probation, parole, or suspension of sentence.