NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**20-217**


**STATE OF LOUISIANA**

**VERSUS**

**BRANDON CHASE GEE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 15610-17
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.


**CONVICTION AFFIRMED.
SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

**John F. DeRosier**
**District Attorney**
**14th Judicial District**
**Karen C. McLellan**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 1481**
**Monroe, LA 71201**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Brandon Chase Gee**

**SAUNDERS, Judge.**

On August 23, 2017, Defendant, Brandon Chase Gee, was charged by bill of information with the aggravated second degree battery of his mother, Cheryl Gee-Finley, in violation of La.R.S. 14:34.7. On April 30, 2018, Defendant filed a "Motion to Amend Plea of Not Guilty to Not Guilty and Not Guilty by Reason of Insanity and Incorporated Memorandum of Law." The motion was granted the same day. Also on April 30, 2018, the trial court appointed a sanity commission composed of Drs. Garrett Ryder and James Anderson to evaluate Defendant's mental state at the time of the offense.

On January 10, 2019, Defendant filed a "Motion for Appointment of Psychiatrist to Determine Defendant's Mental State at Time of Offense." The same day, the trial court appointed a new sanity commission, this time composed of Drs. Andrew Thrasher and Patrick Hayes, to evaluate Defendant's mental state at the time of the offense. On February 4, 2019, counsel filed a motion to continue trial which indicated the initial sanity commission only evaluated Defendant's competency to stand trial, not his mental state at the time of the offense; additionally, the commission failed to perform the appropriate examination at any point, necessitating the appointment of the second sanity commission.

Trial commenced on April 9, 2019, and on April 10, 2019, the jury found Defendant guilty as charged. On June 11, 2019, Defendant filed a motion for new trial, asserting the verdict was contrary to the law and evidence and that the ends of justice would best be served by the granting of a new trial. The motion was denied the same day. Sentencing was held on June 17, 2019.

At the outset of the sentencing hearing, Defendant declared that he had fired trial counsel and that she was no longer his attorney. The trial court, without any inquiry into Defendant's competency to represent himself, his educational

background, or any other relevant information, released trial counsel and allowed Defendant to represent himself at sentencing. Defendant proceeded to accuse trial counsel of intentionally sabotaging his case and actively helping the prosecution, declared that every part of the Calcasieu Parish justice system was corrupt, and stated he had been wrongfully convicted and conspired against. The trial court, after stating it was "disappointed and taken aback" by Defendant's lack of remorse, sentenced Defendant to eight years at hard labor and ordered that the first year be served without the benefit of probation, parole, or suspension of sentence after the State indicated the statute required the one-year restriction on benefits.

Defendant now appeals his conviction and sentence. Defendant contends there was insufficient evidence to support his conviction, for three reasons: (1) the State failed to prove he had specific intent to commit serious bodily injury; (2) he did not know right from wrong at the time of the offense; and (3) he acted in self-defense. Defendant also contends the trial court erred in allowing him to represent himself at sentencing without any investigation into his ability to represent himself, that the eight-year sentence imposed by the trial court was constitutionally excessive, and that the trial court erred in denying Defendant's motion to reconsider sentence.

**FACTS:**

On June 15, 2017, Cheryl Gee-Finley returned home from work at around 11:00 p.m. and removed some items from her truck, including a table leg and some garbage bags. Later that night, Defendant, who lived with her, returned home. Sometime after Defendant returned home, an altercation took place between Ms. Finley and Defendant which left Ms. Finley severely injured and serves as the basis for Defendant's aggravated second degree battery charge. The circumstances surrounding the altercation were disputed at trial.

2

Ms. Finley testified that she and Defendant argued about the garbage bags she had brought in. Ms. Finley testified that later in the night she played scratch offs and had a winning ticket. She testified that she remembered beginning to leave to cash in the scratch off ticket, but then she woke up on the ground with severe injuries and the last thing she remembered was reaching for her keys.

Defendant stated that his mother was suffering from delusions which were becoming dangerous. Defendant claims that when he returned home on the night in question, his mother began banging on the door to his bedroom demanding to know where her trash bags were. Defendant then stated that the last thing he can remember is her coming at him with a knife and "the big stick with the screw hanging out of it," asserting he blacked out when his life was threatened. After being attacked, Defendant stated his next memory was holding his bleeding arm, unaware of the location of the guitar that he had previously been holding. When later questioned and confronted with pictures of his mother's injuries, Defendant claimed she came at him with a knife and he kept her at bay with his guitar.

The table leg that Ms. Finley had brought home that night was found in the living room, although Ms. Finley was adamant that she had brought it to her bedroom that night. A knife was also found on the floor next to Ms. Finley, although she stated that she had no idea how it ended up next to her.

Defendant was found to have three cuts on his arm after the night in question. Yolanda Charles, a paramedic who looked at Defendant's injuries, noted Defendant had three shallow lacerations to the center of his left forearm and stated Defendant told her he was cut with a kitchen knife. Ms. Charles testified the cuts did not appear to be defensive wounds, noting there were three cuts in a row with no other marks on his arm.

Dr. Patrick Hayes testified that his interviews and review of medical records led him to the conclusion that Defendant understood the difference between right and wrong on June 16, 2017. He noted there was no evidence of any "serious persistent mental illness" in the days and months leading up to the incident. He also noted there was no evidence that on the night of the incident Defendant "was disorganized, catatonic, delusional[, or] manic." Dr. Hayes testified Defendant had schizotypal personality disorder, which he characterized as "schizophrenia-like, or schizophrenia-light."

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent concerning Defendant's sentence. Additionally, trial counsel has raised two possible errors patent in his assignments of error – one in Assignment of Error Number Two and one in Assignment of Error Number Three. We will discuss the possible errors patent in their respective assignments of error.

We find that the trial court erred in that Defendant received an indeterminate sentence. Although the court minutes and the commitment order reflect the sentence was ordered to be served in the Louisiana Department of Corrections, the sentencing transcript does not so indicate. According to the sentencing transcript, the trial court sentenced Defendant to eight years in "jail." Although the jurisprudence states that committing a prisoner to the "Department of Corrections" necessarily commits him to hard labor, this court has found no cases stating that sentencing a defendant to "jail" necessarily commits him to hard labor or without hard labor. *State v. Lisenby,* 534 So.2d 996 (La.App. 3 Cir. 1988), La.R.S. 15:824(C). Louisiana Revised Statutes 14:34.7 requires imprisonment for up to fifteen years with or without hard labor. Thus, the trial court's failure to indicate whether the sentence is to be served

4

with or without hard labor renders the sentence indeterminate, requiring the sentence be vacated and the case remanded for resentencing. *State v. Ervin*, 17-18 (La.App. 3 Cir. 12/13/17), 258 So.3d 677. Consequently, we vacate the sentence and remand the case for resentencing with instructions that the trial court specify whether the sentence is to be served with or without hard labor.

## ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, Defendant contends there was insufficient evidence to convict him of second degree battery because: (1) the State failed to prove he had the necessary specific intent to commit serious bodily injury: (2) he did not know right from wrong at the time of the offense: and (3) he acted in self-defense.

The analysis for insufficient-evidence claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was convicted of aggravated second degree battery, which is defined by La.R.S. 14:34.7(A) as "a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." Louisiana courts have repeatedly held aggravated second degree battery requires specific intent. *See State v. Clanton*, 19-316 (La.App. 4 Cir. 11/6/19), 285 So.3d 32; *State v. Harris*, 17-303

5

(La.App. 5 Cir. 12/20/17), 235 So.3d 1354, *writ denied*, 18-160 (La. 6/15/18), 257 So.3d 675; *State v. Harrison*, 46,325 (La.App. 2 Cir. 5/18/11), 69 So.3d 581.

Under La.R.S. 14:10(1), "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." As noted in *Harrison*, "[s]uch state of mind can be formed in an instant. *State v. Cousan,* 94-2503 (La.11/25/96), 684 So.2d 382. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant." 69 So.3d at 592. We note that Defendant's argument that he lacked specific intent is inherently tied to his claim of self-defense, therefore we will address the two simultaneously.

Defendant's argument regarding the State's alleged failure to prove specific intent is based upon his assertion that:

> While specific intent can be inferred from the circumstances, the circumstances of what occurred that night are not clear. Causation in the form of a single blow from [Defendant] as [the victim] lunges is not proof of the necessary state of mind to support a conviction of aggravated second degree battery.

Likewise, Defendant's claim of self-defense hinges on his own testimony that his mother attacked him with a table leg and a knife. Unfortunately, the only two witnesses to the incident that occurred on June 16, 2017, were Defendant and his mother, both of whom have histories of mental illness and claimed to have trouble remembering the incident. Nonetheless, they provided starkly different stories about what happened. Ms. Finley testified she was in her room playing scratch-offs, walked down the hallway to grab her keys, then woke up with her wig knocked off and serious injuries to the back of her head and her eye. As noted in his interview with Captain Spell, Defendant claimed his mother attacked him and he pushed her away with his guitar. Presented with these two versions of the event, the jury clearly

6

found Ms. Finley to be the more credible witness, thus finding specific intent and rejecting Defendant's self-defense claim.

> A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Davis,* 02-1043, p. 3 (La.6/27/03); 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04); 874 So.2d 66, 79.

*State v. Dorsey*, 10-216, pp. 43-44 (La. 9/7/11), 74 So.3d 603, 634, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012).

The jury here was faced with two possible scenarios: either Defendant attacked his mother when she was not looking or she attacked him with a pair of weapons and he defended himself with an unfortunate, disastrous result. Ms. Finley's testimony has no internal contradiction or irreconcilable conflict with physical evidence. Defendant points to the fact that a knife was found next to Ms. Finley and the table leg was in her vicinity when she was found. However, this circumstantial evidence can be reconciled with Ms. Finley's testimony by virtue of a very simple explanation which the State implied throughout trial: Defendant cut himself, planted the knife and table leg, and then left the house. The presence of a knife and a table leg do not invalidate the jury's decision that Ms. Finley was the more credible witness. As such, there is sufficient evidence under the *Jackson*[1] standard to find Defendant possessed specific intent and was not acting in self-defense.

Defendant also contends he should have been found not guilty by reason of insanity. Insanity, as an affirmative defense, is defined by La.R.S. 14:14: "If the

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195.

circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility." The supreme court has previously noted that "[t]o be exempted from criminal responsibility on the grounds of insanity, a defendant must persuade the jury that he had a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question." *State v. Parker*, 416 So.2d 545, 551 (La.1982)(footnote omitted).

There is no question that Defendant had a mental disease or defect, as Dr. Hayes, a court-appointed psychiatrist, diagnosed Defendant as having schizotypal personality disorder. The burden, however, was upon Defendant to persuade the jury said mental disease "rendered him incapable of distinguishing right from wrong." *Id*. Defendant presented no evidence to support his contention. Although Dr. Hayes testified he could not rule out the possibility that Defendant may have been suffering from psychotic thinking at the time of the event, he nonetheless offered the expert opinion that Defendant knew right from wrong and was legally sane. Defendant presented no evidence to contradict Dr. Hayes's opinion. In his brief to this court, Defendant simply notes he had a number of potential stressors occur prior to the incident and concludes that he "suffers from a mental illness that prevented him from distinguishing right from wrong on the night in question." When viewed under the *Jackson* standard, we find there is sufficient evidence for a rational juror to have found Defendant was not insane at the time of the attack. Accordingly, this argument lacks merit, and Defendant's conviction is affirmed.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Defendant contends the trial court erred in allowing him to represent himself at sentencing. According to Defendant, the trail

8

court failed to inquire into whether Defendant understood the dangers and disadvantages his decision entailed.

> Pursuant to the Sixth Amendment of the United States Constitution, a defendant has a right to counsel at every critical stage of criminal proceedings, including a resentencing hearing. *State v. Dupas,* 94–1264 (La.App. 3 Cir. 3/6/96), 670 So.2d 667. "Unless a defendant has made a knowing and intelligent waiver of his right to counsel, any sentence imposed in the absence of counsel is invalid and must be set aside." *Id.* at 669 (quoting *State v. Flowers,* 598 So.2d 1144, 1146 (La.App. 1 Cir.1992)). In determining whether a defendant has knowingly and intelligently waived the right to counsel, a trial court must conduct "a meaningful inquiry" with the defendant regarding the waiver and must advise the defendant "of the dangers and disadvantages of self-representation." *State v. Hayes,* 95–1170, pp. 4–5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685–86. Alternatively, this court has found that a defendant's conduct can constitute an implied waiver of the right to counsel. *State v. Batiste,* 96–526 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, *writ denied,* 97–174 (La.6/30/97), 696 So.2d 1003; *State v. Mitchell,* 580 So.2d 1006 (La.App. 3 Cir.1991), *writ denied,* 613 So.2d 969 (La.1993). Such conduct includes dilatory tactics by a defendant, for example, obtaining multiple continuances by refusing to accept court-appointed counsel and failing to secure other counsel. *Id.* Additionally, a criminal defendant is entitled to court-appointed counsel at each stage of the proceedings if indigent and facing charges punishable by imprisonment.

*State v. Joseph*, 14-1188, pp. 3-4 (La.App. 3 Cir. 5/6/15), 164 So.3d 389, 391.

The State contends that because Defendant had previously made a knowing and intelligent waiver of his right to testify, he understood what a waiver was and chose to waive his right to counsel. At sentencing, Defendant expressed dissatisfaction with his court appointed attorney and demanded she be fired. The following colloquy took place after counsel suggested the court should inquire whether Defendant wished to represent himself:

> **THE COURT:**   Let the record reflect the same.  Now, Mr. Gee, it's been suggested, that after discussions with your attorney who represented you at trial, that you wish to make a motion to the Court today as a pro se or in person litigant.  How do you wish to proceed?
>
> **DEFENDANT:**   Yes. I'd like to represent myself.
>
> **THE COURT:**   Thank you.  And this is for sentencing only.

**DEFENDANT:** Yea. That's all that's left, right?

**THE COURT:** Well, I mean, you have the appellate process as well. But what you're telling the Court today, that you wish not to have this attorney present with you to compel and/or make any arguments at sentencing today.

**DEFENDANT:** Right.

**THE COURT:** Okay. And you wish to represent yourself --

**DEFENDANT:** Fire the attorney. Full capacity to represent myself at this moment.

**THE COURT:** Okay. Thank you, Mr. Gee. Let the record reflect the same. For sentencing purposes, the Court is going to release the Public Defender, allow Mr. Gee to proceed at this time and for sentencing as a pro se litigant.

Despite knowing Defendant suffered from schizotypal personality disorder and hearing from Dr. Hayes that Defendant could suffer from delusional or paranoid thinking episodes, the court made no inquiry into the reason for Defendant's dissatisfaction with his attorney, failed to explain to Defendant that he may be at a disadvantage by not having his attorney represent him, and made no inquiry into his current mental state. Defendant then proceeded to accuse his attorney of actively sabotaging his case and accused the entire Calcasieu Parish justice system of conspiring against and persecuting him.

The State contends Defendant's emphatic statement that he wanted to represent himself should be considered a valid waiver, despite the failure of the court to make any inquiry into Defendant's ability to understand the consequences of dismissing his attorney at sentencing. The State relies upon *State v. Harper*, 381 So.2d 468 (La.1980), wherein the supreme court found that a defendant's refusal to accept the help of his court appointed counsel and decision to proceed pro se instead constituted a waiver of his right to counsel. However, the *Harper* court expressly stated "[a] defendant need not have the skill and knowledge of a lawyer in making

10

his decision, but he must be aware of the dangers and disadvantages of self representation." 381 So.2d at 471.

In *Harper*, the defendant asserted prior to trial that he neither wanted the attorney the court appointed to him nor to represent himself; instead, he repeatedly requested that the court appoint the Civil Liberties Union to represent him. When the defendant refused to obtain counsel on his own, the trial court gave him the options of having court-appointed counsel represent him or representing himself pro se. The defendant proclaimed he wanted neither and the trial court ultimately proceeded to trial with the defendant representing himself. There appears to have been no issue of mental competency or mental disease at play in *Harper*, and the court addressed the issue of self-representation with the defendant multiple times prior to trial.

*Harper* is inapplicable to the instant case. There was no prior discussion of Defendant potentially dismissing his attorney and one of Defendant's affirmative defenses at trial was that he was insane due to his schizotypal personality disorder. The trial court should have been aware of these issues and should have discussed the dangers and disadvantages of proceeding pro se with Defendant before dismissing his attorney and allowing him to represent himself. In light of *Joseph*, 164 So.3d 389, we vacate Defendant's sentence and remand the case to the trial court for resentencing.

## ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR:

Defendant's remaining assignments of error are related to the constitutionality of his sentence, namely the failure of the trial court to state a sufficient basis for his eight-year sentence and a claim the sentence was excessive in light of the facts and circumstances of the case. Due to the sentence being vacated in the previous section, these assignments of error are moot and need not be addressed.

11

## CONCLUSION:

Defendant's conviction is affirmed. Defendant's sentence is vacated, and the case is remanded for resentencing in light of the trial court's failure to determine whether Defendant understood the repercussions of representing himself pro se and its failure to render a determinate sentence. Upon remand, the trial court is instructed to specify whether the sentence is to be served with or without hard labor.

**CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

This opinion is NOT DESIGNATED FOR PUBLICATION.

Uniform Rules—Courts of Appeal, Rule 2-16.3.